UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JUDY K. MONTGOMERY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. V-05-79 |
| | § | |
| JO ANNE B. BARNHART, | § | |
| Commissioner of the Social | § | |
| Security Administration, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM & ORDER**

Pending before the Court is Plaintiff Judy K. Montgomery's ("Montgomery") Motion for Summary Judgment (Dkt. #9) and Defendant, Jo Anne B. Barnhart, the Commissioner of the Social Security Administration's ("Commissioner") Motion for Summary Judgment (Dkt. #10). After consideration of the motions, the entire record, and the applicable law, the Court is of the opinion that Montgomery's motion should be GRANTED and the Commissioner's motion should be DENIED.

**Factual and Procedural Background**

Montgomery filed this action pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1983(c)(3) to review the decision of the Commissioner denying Montgomery's application for Social Security Disability ("SSDI") and Supplemental Security Income ("SSI") for lack of disability.

At the time of her hearing before the Administrative Law Judge ("ALJ"), Montgomery was a 49 year old woman with a high school education. On November 19, 1999 Montgomery protectively filed applications for SSDI and SSI payments, alleging disability as of August 30, 1999 due to asthma, hepatitis B and C, and liver disease. In the fifteen years prior to the onset of her alleged disability, Montgomery had been employed as a housekeeper in a private residence, and

housekeeper and ranch hand on a ranch, a saddle maker, a convenience store cook, a store clerk, and an assistant inn keeper.[1]

The claim was denied initially and on reconsideration, and a request for hearing was timely filed. Montgomery appeared and testified before the ALJ on June 26, 2003. Dr. Don Marth, Ph.D., ("VE") appeared and testified in the capacity of an impartial vocational expert. The ALJ also considered the submitted opinions of Dr. M.C. Wilkinson, M.D. ("Dr. Wilkinson"), Dr. William H. Pieratt III, D.O. ("Dr. Pieratt"), Dr. Johnnie G. Fisher, M.D. ("Dr. Fisher"), and Dr. K. Kumar ("Dr. Kumar").

On November 26, 2003 the ALJ issued a decision denying entitlement to the benefits sought on the grounds that Montgomery retained the residual functional capacity to perform the past relevant work in which she engaged before the onset of her disability. Montgomery requested a review of the ALJ's decision by the Appeals Council. With her appeal, Montgomery submitted more than 250 pages of new and updated medical records. On July 8, 2005, the Appeals Council denied Montgomery's request for review on the grounds that there was no reason to conclude that the ALJ abused his discretion, there was an error of law, the decision was not supported by substantial evidence, there is a broad policy or procedural issue that might effect the public interest, or there is new material evidence that is contrary to the weight of evidence previously of record.[2] In its decision, the Appeals Council acknowledged that it considered Montgomery's additional evidence.

## Standard of Review and Applicable Law

---

[1] Administrative Transcript ("Tr."), Exhibit 1E, p. 3.

[2] Tr., p. 5, Notice of Appeals Council Action.

The Court's review of the Commissioner's final decision to deny disability benefits is limited to two issues: (1) whether substantial record evidence supports the decision, and (2) whether proper legal standards were used to evaluate the evidence. *See Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002) (citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)); *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999) (quoting *McQueen v. Apfel*, 168 F.3d 152, 157 n. 2 (5th Cir. 1999)).

If the findings of fact contained in the Commissioner's decision are supported by substantial evidence, they are conclusive and this Court must affirm. The widely accepted definition of "substantial evidence" is more than a mere scintilla, but less than a preponderance. *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Carey*, 230 F.3d at 135. In applying this standard, the court is to review the entire record, but it may not reweigh the evidence, decide the issues de novo, or substitute the court's judgment for the Commissioner's judgment. *Brown*, 192 F.3d at 496. Only if no credible evidentiary choices of medical findings exist to support the Commissioner's decision should the court overturn it. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). The Court reviews the legal standards applied by the Commissioner de novo.

To claim entitlement to disability benefits, a claimant must show that she was disabled on or before the last day of her insured status. *Demandre v. Califano*, 591 F.2d 1088 (5th Cir. 1979). The legal standard for determining disability under the Act is whether the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less

than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is capable of performing any "substantial gainful activity," the regulations provide that the Commissioner should evaluate disability claims according to the following sequential five-step process:

(1) a claimant who is working, engaging in a substantial gainful activity, will not be found to be disabled no matter what the medical findings are;

(2) a claimant will not be found to be disabled unless he has a "severe impairment;"

(3) a claimant whose impairment meets or is equivalent to an impairment listed in [the Listings] will be considered disabled without the need to consider vocational factors;

(4) a claimant who is capable of performing work he has done in the past must be found "not disabled;" and

(5) if the claimant is unable to perform his previous work as a result of his impairment, then factors such as age, education, past work experience, and residual functioning capacity must be considered to determine whether he can do other work.

20 C.F.R. § 404.1520(b)-(f); *see also Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994).

To be entitled to benefits, a claimant bears the burden of proving that she is unable to engage in substantial gainful activity within the meaning of the Act. *See Wren v. Sullivan,* 925 F.2d 123, 125 (5th Cir. 1991) (citing *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985)). The claimant must show that she suffers from a mental or physical impairment that not only renders her unable to perform her previous work, but, given her age, education, and work experience, prevents her from engaging in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which she lives, or whether a specific job vacancy exists for her, or whether she would be hired if she applied for work. *Johnson v. Harris*, 612 F.2d 993, 997 (5th Cir. 1980) (quoting *Rhynes v. Califano*, 586 F.2d 388, 389-90 (5th Cir. 1978)). However, if the claimant can show that she can no longer perform her previous job, the

burden then shifts to the Commissioner to show that there exists some other form of substantial gainful employment that the claimant can perform.  *Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980); *Johnson*, 612 F.2d at 997.  By judicial practice, this translates into the claimant bearing the burden of proof on the first four of the above steps and the Commissioner bearing it on the fifth.  *See Brown*, 192 F.3d at 498; *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987)).  The analysis stops at any point in the five step process upon a finding that the claimant is or is not disabled.  *See Greenspan*, 38 F.3d at 236.

## Discussion

In the unfavorable decision, the ALJ determined that Montgomery met the nondisability requirements for a period of disability and disability insurance benefits.  He then followed the five step process outlined in the regulations.  At the first step, the ALJ found that Montgomery had not engaged in substantive gainful activity since August 30, 1999.  At step two, the ALJ determined that Montgomery had an impairment (i.e., hepatitis C with cirrhosis of the liver, asthma, mild degenerative joint disease of the left knee, a major depressive disorder, chronic, recurrent, without psychotic features, and post-traumatic stress disorder secondary to abuse) that constituted severe medically determinable impairments.  At the third step, the ALJ determined that Montgomery's severe impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. Pt. 404, Subpart P, Appendix 1.  At step four, the ALJ determined that Montgomery's "past relevant work as a housekeeper in a private home and as a housekeeper on a ranch did not require the performance of work-related activities precluded by her residual functional capacity."[3]

Montgomery objects to the ALJ's findings on the grounds that he did not properly consider

---

[3] Tr., p. 23, Decision of the Office of Hearings and Appeals.

the opinions submitted by Dr. Pierrat, Dr. Fisher, and Dr. Kumar. Montgomery contends that there was not good cause for rejecting the opinions of these treating physicians. The regulations state that, normally, a treating physician's opinion regarding the nature and severity of a patient's impairment will be given controlling weight. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) (internal quotations omitted). But this is so only if the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with other substantial evidence. *Id.* (citing *See Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995)); *see also* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). The regulations also state that an evaluation by the claimant's treating physician should be accorded great weight. *Martinez*, 64 F.3d at 176 (citing *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir.1994), *cert. denied*, 514 U.S. 1120, 115 S. Ct. 1984 (U.S. 1995)). The ALJ ultimately may give less weight to the medical opinion of a treating physician when his statements are conclusory, unsupported, or otherwise incredible. *See Greenspan*, 38 F.3d at 237. The factors to be applied in determining the weight given to the treating physician's opinion are (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) supportability (by clinical signs and laboratory findings); (4) consistency with other medical evidence in the record; (5) specialization in a particular field of medicine; and (6) other factors (such as the physician's understanding of the evidentiary requirements of the social security disability program and the extent to which the physician is familiar with other information in the record). *Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir. 2001).

Even though the treating physician's medical opinion diagnosis should be afforded considerable weight, the "'the ALJ has sole responsibility for determining a claimant's disability status.'" *Martinez*, 64 F.3d at 176 (quoting *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir.1990)); *See also Frank v. Barnhart* 326 F.3d 618, 620 (5th Cir. 2003) (per curiam) ("Among the opinions

by treating doctors that have no special significance are determinations that an applicant is 'disabled' or 'unable to work' . . . [t]hese determinations are legal conclusions that the regulation describes as 'reserved to the Commissioner.'" (citations omitted)); *Barajas v. Heckler,* 738 F.2d 641, 645 (5th Cir. 1984) (a treating physician's statement that an individual is disabled does not mean that she is disabled within the meaning of the Social Security Act). The determination of disability is not a medical opinion entitled to deference, but a legal conclusion within the Commissioner's scope of authority. *Frank*, 326 F.3d at 620.

The Court notes that upon reviewing his decision, it is clear that the ALJ did consider Dr. Pierrat's, Dr. Fisher's, and Dr. Kumar's opinions. For instance, the ALJ discusses Dr. Pierrat's opinion about the effects of Montgomery's impairments on her residual functional capacity. The ALJ determined that Dr. Pierrat's opinion that Montgomery "can lift a maximum of 5 pounds and can never climb, balance, stoop, crouch, kneel, or crawl due to asthma and fatigue" was inconsistent with Dr. Pierrat's evaluation of Montgomery's lung capacity and his examination report stating that Montgomery's "ability to do work involving sitting, standing, moving about, lifting, carrying, handling objects, hearing, and speaking is overall intact."[4] The ALJ further found that Dr. Pierrat's opinion was contradicted by Montgomery's treatment history, the opinions of other physicians, and her reported level of daily activity. Having independently reviewed the record, the Court finds that there is substantial evidence supporting the ALJ's determination that Dr. Pierrat's opinion that Montgomery "can lift a maximum of 5 pounds and can never climb, balance, stoop, crouch, kneel, or crawl due to asthma and fatigue" is not credible.

It is also clear that the ALJ considered Dr. Fisher's opinion that Montgomery had a Global

---

[4] Tr., p. 21.

Assessment of Functioning ("GAF") score of 40 and Dr. Kumar's opinion that she had a GAF score of 45. The ALJ explained that a GAF of 40 indicates "some impairment in reality testing or communication (for example, speech is illogical, obscure, or irrelevant) or the claimant has a major impairment in several areas such as work or school, family relations, judgment, thinking or mood."[5] A GAF score of 45 "indicates [that Montgomery] was experiencing serious symptoms or had a serious impairment in social, occupational, or school functioning."[6] The ALJ determined that these GAF scores were inconsistent with Dr. Fisher and Dr. Kumar's own findings on examination which indicated that Montgomery was experiencing a much more moderate degree of impairment. The Court finds that the ALJ's determination that Dr. Fisher and Dr. Kumar's GAF assessments of Montgomery are not credible is supported by substantial evidence of record. Specifically, the Court notes that in an evaluation prepared by Dr. Fisher for the Texas Rehabilitation Commission ("TRC"), he opined that Montgomery had no major cognitive or perceptual difficulties and she was able to drive a car, cook, do laundry, and help with household errands.[7] Similarly, in Dr. Kumar's TRC evaluation of Montgomery, he described her as "alert," "quite verbal and able to express her feelings," capable of abstract thought, exhibiting intact judgment, and her intelligence was assessed in the high average range.[8] The Court finds that substantial evidence in the record supports the ALJ's determination that the GAF scores of 40 and 45 were not supported by the evidence and accordingly, that Dr. Kumar and Dr. Fisher's opinions on Montgomery's residual functional capacity should not be accorded significant weight.

---

[5] *Id.*

[6] *Id.*

[7] Tr., pp. 94–95.

[8] Tr., pp. 49–54.

8

However, although the ALJ may reject the opinion of any physician when the evidence supports a contrary conclusion, he is required "to state with particularity" the weight he has given to the medical opinions on which he did rely. *McCloud v. Barnhardt*, 166 Fed. Appx. 410, 418 (11th Cir. 2006) (citing *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)); *see also* Social Security Ruling 96-2p, 1996 WL 374188, at *5. In the ALJ's decision, he merely stated that "[a]ll other treating and examining medical source opinions were accorded weight to the extent they are consistent with the rationale and findings herein."[9] This general statement is not sufficient to satisfy the requirement that the ALJ explain with particularity the weight he placed on the opinion of each and every treating source. Especially in a case such as the one at bar, where the Commissioner makes a determination contrary to the opinion of multiple treating sources, the claimant must be able to discern from the Commissioner's decision the particular reasons why certain opinions were rejected and why others were accepted and relied upon. In this case, the ALJ did not satisfy his burden under 20 C.F.R. 404.1527 and, consequently, this case must be remanded for the ALJ to articulate these crucial findings.

Montgomery also objects to the form of the Appeals Council's review of the ALJ's decision. Specifically, she maintains that the Notice of Appeals Council Action ("Notice") was "a superficial, boilerplate statement" that failed to set forth with particularity the weight given to the treating source opinions contained in the additional evidence submitted to the Appeals Council.[10] At the time the

---

[9] Tr., p. 21.

[10] 20 C.F.R. 404.1527(d)(2):
When we do not give the treating physician's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. We will always give good reason in our notice of determination or decision for the weight we give your treating source's opinion.

Appeals Court issued its Notice sanctioning the findings of the ALJ, it had received more than 250 pages of additional evidence from Montgomery containing medical records and additional opinions of treating physicians.  The Appeals Court acknowledged consideration of this additional evidence, but did not address the contents of the additional evidence.  The Appeals Council merely explained that it considered the new evidence and found that it was not a basis for changing the decision of the ALJ.

The Commissioner contends that the format of the Notice was sufficient to comply with the regulations and submits that in July 1995, "the Appeals Council issued an Agency Policy statement 'suspending the requirement for a detailed discussion of additional evidence and for specific responses to contentions in denial notices.'" The Commissioner argues that by virtue of this Agency Policy Statement, the Appeals Council was not required to specifically explain the weight given to treating source opinions contained within the new evidence.  The Court disagrees.

The regulations specifically state that the Appeals Council will "*always* give good reason in [its] notice of determination or decision for the weight [given] to [a] treating source's opinion." The regulations require the Appeals Council to explain the weight given to the opinions contained in the new evidence before it.  The Court finds that the Appeals Council Notice failed to comply with 20 C.F.R. 404.1527(d)(2) because it did not give good reason for the weight given to the treating source opinions contained within the new evidence.

Therefore, despite sufficient evidence of record to support the determinations of the ALJ under the deferential standard of review which this Court applies, the Court finds that Montgomery's motion for summary judgment must be granted and this case must be remanded to the Commissioner to provide good reasons in compliance with 20 C.F.R. 404.1527 for the weight accorded (1) the treating and examining source opinions relied upon by the ALJ, and (2) the treating and examining

source opinions contained in the new evidence submitted to the Appeals Council.

## Conclusion

Fore the foregoing reasons, Montgomery's Motion for Summary Judgment (Dkt. #9) is **GRANTED** and the Commissioner's Motion for Summary Judgment (Dkt. #10) is **DENIED**. The case shall be remanded to the Commissioner for further proceedings in accordance with this Order. The Court shall enter a final judgment on even date herewith.

It is so **ORDERED**.

Signed this 15th day of August, 2006.

_____
JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE